# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**HD**

Rcv'd by:_____

| | |
|---|---|
| Jane Doe<br>5 South Center Street, #1100<br>Westminster, MD 21157,<br><br>                Plaintiff,<br><br>James T. DeWees, Sheriff of Carroll<br>     County, 100 North Court Street,<br>     Westminster, Maryland 21157;<br><br>Christopher Stonesifer, Deputy Sheriff,<br>     100 North Court Street, Westminster,<br>     Maryland 21157;<br><br>Dereck E. Davis,Treasurer of Maryland,80<br>     Calvert Street, Room 109, Annapolis,<br>     MD 21401, for the State of Maryland;<br><br>                Defendants. | Civil Action No.<br><br>  GLR 2 6 CV 3 0 2 1<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL REQUESTED** |

USDC- BALTIMORE
'26 AUG 3 PM12:10

NOW COMES Plaintiff Jane Doe,[1] *pro se*, and hereby files this Complaint for damages as a result of Defendants' wrongful acts. Plaintiff sues all Defendants in their individual capacities, and additionally, sues all Defendants who are determined to be employees of local government in their official capacities, and states as follows in support thereof:

---

[1] Jane Doe is Plaintiff's name, known to all Defendants and the public, and as prosecuted by the State of Maryland, as tried and convicted in the Carroll County District Court and the Circuit Court of Carroll County, Maryland; and as held in the Carroll County Detention Center.

## I. PARTIES

### A. The Plaintiff

Jane Doe
c/o LWRN
5 South Center Street, #1100
Westminster, MD 21157
(410) 857-5444
email: lwrn@mail.com

### B. The Defendants

*1.*    James DeWees, Sheriff of Carroll County, 100 North Court Street, Westminster, Maryland 21157, ph: 410-386-2900, email: jdewees@ccg.carr.org; *in his individual capacity.*

2.    Christopher Stonesifer, Deputy Sheriff, 100 North Court Street, Westminster, Maryland 21157, *in his individual capacity.*

3.    State of Maryland, through Dereck E. Davis, Maryland State Treasurer, 80 Calvert Street, Annapolis, Maryland 21401, ph: 410-260-7533, email treasurer@treasurer.state.md.us.

   In any action under Md. Code, State Government § 12-101 *et. seq*, the Maryland State Tort Claims Act, "service of the complaint and accompanying documents is sufficient *only if* made on the Treasurer." § 12-801(a).

## II. JURISDICTION AND VENUE

1.    This action is brought against defendants pursuant to 42 U.S.C. § 1983 for committing acts under the color of law and depriving plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and the Maryland Constitution.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, § 1343(a)(3) and § 1367(a).

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions which give rise to the action occurred within this District and within three years of the filing of this Complaint.

4.      This case presents a federal question, an actual case in controversy arising under the Constitution of the United States, involving Article 6, Clause 2 of the Constitution, and the Fourth and Fourteenth Amendments of the United States Constitution.

5.      This action is also brought pursuant to Md. Code, State Government, § 12-101 *et. seq.*, the "Maryland Tort Claims Act" and Md. Code, Courts & Judicial Proceedings, § 11-108. Conditions precedent to filing under the Maryland Tort Claims Act have been met; claims were filed with the Treasurer within one year as required by law.

6.      This action is also brought under the jurisdiction of the Common Law of the State of Maryland, as established by the Maryland Constitution.

7.      All actions complained of took place in Carroll County, Maryland.

### III. COMPLAINT

1.      This is a civil action seeking damages against Defendants for committing acts under color of law, which deprived Plaintiff of rights secured by the Constitution and laws of the United States; for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws, and for refusing or neglecting to *prevent* such deprivations and denials to Plaintiff.

2.      At all times material to this Complaint, Defendants acted under color of their various State or local government positions, and under the color of the statutes, customs, ordinances, and usage of Carroll County, Maryland; the State of Maryland; the Maryland Courts; and the Offices of the Carroll County Sheriff.

3.      This is a Complaint brought against Defendants as the result of their malfeasance in office, false arrest, false imprisonment, and malicious prosecution, as well as violations of both

the Maryland and United States constitutions, and other wrongful acts against Plaintiff occurring in and around Westminster, Maryland on April 21, 2022 and continuing thereafter.

4. Plaintiff Doe was arrested on April 21, 2022 by Deputy Sheriff Christopher Stonesifer following an illegal traffic stop made without any probable cause, on a pretext fabricated by him and known to be false.

5. Plaintiff Doe was detained from April 21, 2022 through April 23, 2022, at the Carroll County Detention Center (CCDC) at 100 North Carroll Street, Westminster, Maryland 21157.

6. Plaintiff Jane Doe is the same Jane Doe who was arrested on April 21, 2022 and detained pretrial in the Carroll County Detention Center with seven pending charges. The charges originally brought against Doe in the District Court of Maryland for Carroll County were filed under case numbers D-102-CR-22-00746, 0JZ0TS9, 0K00TS9, 0K10TS9, 0K20TS9, 0K30TS9, and 0K40TS9.

7. At District Court trial on August 30, 2022, Plaintiff Jane Doe was adjudged guilty of five of the charges, and she appealed for a Circuit Court *de novo* jury trial of the charges (0JZ0TS9, 0K10TS9, 0K20TS9, 0K30TS9, and 0K40TS9) on October 14, 2022.

8. At a jury trial conducted from August 1–August 2, 2023, in the Circuit Court for Carroll County, Maryland, case number C-06-CR-22-668, the jury acquitted Plaintiff Jane Doe on August 2, 2023, of the sole charge which formed the only basis for the traffic stop.

9. At all times following her arrest, during her detention, upon her release, and to the present, Plaintiff Doe asserted and exercised, in all situations, her right to retain the security of her person and body in the absence of any cause for her arrest, as is guaranteed by Articles 24 and 26 of Maryland's Declaration of Rights and the Fourth and Fourteenth Amendments of the United States Constitution.

10.     Plaintiff's name is Jane Doe; she was arrested, detained, prosecuted, tried, and sentenced as Jane Doe in the Maryland courts.  She is known to all parties as Jane Doe, and she is the real party in interest.

11.     Plaintiff Jane Doe's true mark, which is her signature, is executed at the end of this document.

12.     The individual Defendants are sued in their individual capacities, but to the extent that any Defendant was acting under the color and authority of local government rather than the State of Maryland, they are sued in their official capacities.

13.     All allegations in this complaint are based on personal knowledge or information and belief of Plaintiff gained through information available to the public.

14.     Paragraphs 1-11, and this paragraph, apply to and are included in the allegations of each and every Count set forth hereunder, as if each paragraph has been set forth fully thereunder.

**COUNT 1**
**Against Defendant Sheriff's Deputy Christopher Stonesifer.**

15.     At all times relevant, Christopher Sonesifer was a deputy in the employ of the Sheriff's Office of Carroll County, and is deemed State personnel.

16.     At all times relevant, Christopher Sonesifer was paid for his law enforcement duties out of the budget of Carroll County.

17.     Christopher Sonesifer has a duty and obligation to conduct his law enforcement activities in a lawful manner, so as to preserve the peace of Carroll County.

18.     Christopher Sonesifer has a duty and obligation to preserve the rights secured by the Constitution of Maryland and the Constitution of the United States to each person he encounters in the course of his employment by the Sheriff's office, including Fourth and Fourteenth

Amendment rights of Jane Doe, and the rights under Maryland's Declaration of Rights, Art. 24 and Art. 26.

19.    On or about April 21, 2022, at approximately 2:30 A.M., Plaintiff Jane Doe was operating a 2001 Saturn passenger vehicle ("car") on the streets of Westminster, Maryland.

20.    Jane Doe was obeying all traffic laws, and stopped at an intersection in a dedicated left-turn lane on a stoplight with her left turn signal engaged.

21.    Across from Jane Doe, in the dedicated turn lane opposite her, was Stonesifer, and he also had his left turn signal engaged.

22.    When the light turned green, Doe began entering the intersection on a left turn, but Stonesifer turned off his left turn signal and began creeping straight forward, in a trajectory which would have caused him to run into the traffic island facing him across the intersection.

23.    Doe observed that Stonesifer had turned off his turn signal, and was proceeding straight out of a dedicated turn lane, and she immediately stopped the Saturn and her turn to avoid being hit by Stonesifer's vehicle, now proceeding straight rather than turning.

24.    Doe yielded to Stonesifer's vehicle, even though that vehicle was proceeding unlawfully.

25.    Stonesifer, who was actually creeping forward at a slow speed, then stopped his vehicle when he had proceeded some ways into the intersection, and after a long pause of perhaps 10-15 seconds, flashed his high beams at Doe's vehicle while they were both still stopped.

26.    Doe, understanding this as a universal sign to proceed, and as a signal that Stonesifer would not continue forward, and further understanding that she had the right of way because she was *lawfully* turning left, while the Deputy's vehicle was *unlawfully* proceeding straight in a dedicated turn lane, finished her left-hand turn.

27.     As soon as Doe cleared the lane in front of him, Stonesifer turned his vehicle, followed her, and initiated a traffic stop by flashing his lights.

28.     Doe pulled over, and when Stonesifer came to the vehicle, she asked him why he had pulled her over.  He replied, "Because you backed up in the intersection." Doe responded to him that that was not true, and that she had done nothing wrong.

29.     Stonesifer demanded license from Doe, and she refused to give it because she understood that he had no lawful authority to demand it.  He had no lawful authority for the demand, because lacked any cause, not even probable cause, for pulling her over.

30.     Stonesifer arrested Doe, and she was detained at the Carroll County Detention Center from April 21–23, 2022.

31.     While Doe was detained, Stonesifer took two to three hours to fabricate (a) a statement of probable cause, (b) statement of charges, and (c) citations to Doe, which he knew to be false.

32.     Stonesifer wrote a statement of probable cause which falsely stated that he was in a middle (non-turning) lane and merely attempted to drive forward, and that Doe failed to yield to him on her left-hand turn.

33.     Stonesifer deliberately omitted that he had flashed his high beams at Doe, a signal to go forward.

34.     In the District Court, Doe inquired of Stonesifer what he normally does when there is uncertainty as to who should proceed, and what he would do to let another driver know it is safe for them to proceed.  He answered that he would flash his high beams at the other driver.

35.     Stonesifer further falsely claimed that Doe obstructed and hindered him in the performance of his duties.  At District Court trial, Doe was acquitted of the obstruction and hindering charge.

36. Stonesifer further falsely claimed that Doe failed to obey a traffic signal. At District Court trial, Doe was acquitted of this charge.

37. Stonesifer further falsely claimed that Doe failed to yield while making a left turn. At the Circuit Court trial, the jury acquitted Doe of this charge.

38. Stonesifer had no authority under Maryland law to detain or arrest a person operating a motor vehicle without a direct observation or probable cause that the person is operating it in violation of a traffic law.

39. Stonesifer has a duty to enforce the laws only in compliance with the authority explicitly granted under those laws.

40. Stonesifer did not observe any violation of the traffic law by a person and had no information or warrant upon which to base a stop. He initiated a stop of Doe without lawful grounds, reasonable suspicion, warrant, cause, or probable cause.

41. Stonesifer leveraged his unlawful initiation of a traffic stop against Doe to fabricate charges which he knew, or had reason to know, Doe had not committed.

42. Stonesifer fabricated a birth date for Doe to put on the arrest paperwork.

43. Stonesifer's illegal arrest of Doe and his fabrication of charges against her were the proximate cause of her pre-trial detention of 2 days.

44. Stonesifer followed up on the fabricated charges by falsely testifying in court in accordance with his false probable cause statement.

45. Stonesifer's illegal arrest of Doe and fabrication of charges and birth date against her were the proximate cause of a prolonged criminal case against her; a conviction based on evidence derived from the fruit of the poisonous tree, that is, Stonesifer's illegal arrest; a

sentence of 60 days in jail, fines and court costs, the costs and time required for multiple appeals; and a probation of three years.

46.    By arresting and causing Doe to be detained without any reason whatsoever, and by fabricating a statement of probable cause, statement of charges, and citations that Stonesifer knew to be false, Stonesifer committed the common law torts of false arrest, false imprisonment, and malicious prosecution.

47.    As a result of the illegal arrest of Doe without any reason whatsoever, and the fabrication of probable cause which Stonesifer knew to be false, Defendant Stonesifer, whether negligently, intentionally, with malice, or with improper motive, or with gross negligence, or deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of her right to be secure in her person, without due process of law, in violation of Articles 24 and 26 of the Maryland Constitution and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff Jane Doe demands judgment for Count 1 against Defendant Stonesifer individually for compensatory damages in an amount exceeding $400,000, and further demands judgment against him for punitive damages in an amount exceeding §600,000, plus the costs of this action and such other relief as the Court or the jury deems just and equitable.

**COUNT 2**
**Against Defendant James T. DeWees.**

48.    At all times relevant, and between December 2, 2014 to the present, Defendant DeWees was the elected Sheriff of Carroll County, and deemed State personnel.

49.    The Sheriff takes office upon taking the oath under Article I, Sec. 9, to support the Constitution and Laws of Maryland.

50.    DeWees is and was the primary law enforcement official in Carroll County.

-9-

51.     DeWees is the official responsible for the training and supervision of all Carroll County Detention Center employees.

52.     DeWees has the power to hire, fire, and discipline Carroll County Detention Center employees.

53.     DeWees is the official ultimately responsible for the training and supervision of all employees, including Sheriff's deputies, in the Sheriff's Office of Carroll County.

54.     DeWees has the power to hire, fire, and discipline Sheriff's deputies.

55.     DeWees is the primary policymaker for the Sheriff's Office.

56.     DeWees is responsible for the administration and management or oversight of the Sheriff's Office and its employees.

57.     Upon reason and belief, DeWees knew, or should have known, that Sheriff's deputies were acting without lawful authority by stopping and arresting criminal defendants without probable cause.

58.     Upon reason and belief, DeWees knew, or should have known, that Sheriff's deputies were fabricating false charges and false statements of probable cause against criminal defendants, but failed to stop them from doing so.

59.     Sheriff DeWees knew that his Sheriff's deputies have been exposed several times for violating the Fourth Amendment and Article 26 of Maryland's Declaration of Rights, and further, for fabricating facts or hiding material facts.

60.     In June of 2017, the Carroll County Times newspaper and WBFF of Baltimore (Fox5News) reported that Sgt. Brandon Holland of the Carroll County Sheriff's Department had placed a GPS on two cars in two separate cases prior to getting a search warrant. Holland had failed to disclose to the judge that a GPS was on one car while applying for a search warrant.

- 10 -

61.     In June of 2017, it was reported by Fox5News and by the Carroll County Times that State's Attorney Steven Kroll had interviewed Holland, and that Holland had indicated that Sheriff DeWees had called and asked him to place a GPS on one Mr. McGuire's car.

62.     The warrantless attachments of GPS units to cars reported in June of 2017 forms one incident in a pattern of Fourth Amendment violations at least tolerated or encouraged as an official custom or *de facto* policy of the Sheriff's Office, or of Sheriff DeWees individually.

63.     As reported in the Baltimore Sun, at least by May of 2022, DeWees knew that Sheriff's Deputy Sean Buenger was accused of making a false statement in a affidavit to secure a search warrant in February of 2022, a violation of the Fourth Amendment and Article 26 of Maryland's Declaration of Rights. The accusation resulted in four circuit court judges announcing on May 31, 2022 that they would refuse to hear cases presented by then-Acting State's Attorney Allan Culver or his deputy prosecutor Edward Coyne.

64.     An internal investigation by the Sheriff's office failed to corroborate the claims against Buenger, but the Maryland State Prosecutor's office investigation was "inconclusive," and that office refused to comment on the case. When Buenger's behavior first came to the attention of Judge Titus of the Circuit Court of Carroll County, however, he stated that the Sheriff's office and State's Attorney's office fought to keep the issue confidential, asking for protective orders "like I've never seen before."

65.     The Maryland Judicial Case Search reveals that Deputy Stonesifer, prior to the arrest of Doe, conducted a high volume of traffic stops resulting solely in derivative paperwork citations such as failing to change the address on a license, or driving without having a license with them.

- 11 -

66.     In the District Court, Stonesifer testified that he often pulled defendants over and engaged them in conversation, so that the defendants would tell him of violations concerning their license to drive.

67.     The high rate of the absence of primary traffic citations, combined with Stonesifer's admitted interrogation tactics evidences a pattern of routinely stopping defendants without the required probable cause, and using illegal stops as fishing expeditions to hunt for secondary documentation violations.

68.     DeWees failed in his constitutional duty toward Plaintiff by failing to train Sheriff's deputies to refrain from actions as described in ¶¶ 46–53, and to uphold, preserve, respect, and observe Doe's rights as set forth in the Fourth, Fifth, and Fourteenth Amendments, and Articles 24 and 26 of Maryland's Declaration of Rights.

69.     DeWees failed in his constitutional duty toward Plaintiff by failing to supervise or discipline Sheriff's deputies with respect to their unconstitutional deprivations of defendants, as described in this Count and in Count 1.

70.     DeWees' failures to train, supervise and discipline Sheriff's deputies in the protection of constitutional rights of individuals have created a *de facto* policy within the Sheriff's office that indifference to or intentional violation of constitutional guarantees will be at least tolerated.

71.     DeWees' failures to train, supervise and discipline the Sheriff's deputies in the protection of constitutional rights of individuals was a moving force behind the malicious prosecution, false arrest and false imprisonment of Doe, and the violation of her constitutional rights as outlined herein.

72.     As a result of the *de facto* policy and failures to train, supervise and discipline his employees, as described in this Count, Defendant DeWees, whether negligently, or intentionally,

- 12 -

with malice, or with improper motive, or with gross negligence, or deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of her liberty without due process of law in violation of Article 24 and Article 26 of Maryland's Declaration of Rights, and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff Jane Doe demands judgment for Count 2 against Defendant DeWees, for compensatory damages in an amount exceeding $400,000, and further demands judgment for punitive damages in the amount of §600,000, plus the costs of this action and such other relief as the Court or the jury deems just and equitable.

## COUNT 3
**Against the State of Maryland**

73.    Under the Maryland Tort Claims Act, § 12-101 *et seq.*, the State of Maryland has waived its sovereign immunity to suit for Sheriffs and Sheriff's deputies when their acts or omissions were made without malice or gross negligence, or "within the scope" of their public duties.

74.    Plaintiff electronically filed a timely Notice of Claim against Stonesifer with the Treasurer of Maryland on August 1, 2024, Reference No. 018860-20240801.  It was denied.

75.    Plaintiff electronically filed a timely Notice of Claim against DeWees with the Treasurer of Maryland on August 1, 2024, Reference No. 018864-20240801.  It was denied.

WHEREFORE, Plaintiff Jane Doe demands judgment for Count 3 against Defendant State of Maryland, if the constitutional violations against Doe, malicious prosecution, false arrest, and false imprisonment are determined to be made without malice or gross negligence, or "within the scope" of Defendants' public duties, for economic and noneconomic damages in an amount in an amount of §800,000, plus the costs of this action and such other relief as the Court or the jury deems just and equitable.

## IV. DAMAGES AND INJURIES

76.     As a direct and proximate result of Defendants' unlawful arrest, false imprisonment, malicious prosecution, and constitutional violations against Doe, she suffered severe, distinct, and permanent physical and psychological injuries.

77.     Plaintiff suffered a profound loss of personal liberty, including nine days spent in physical confinement and three years under restrictive probation.

78.     Plaintiff incurred significant out-of-pocket financial costs, expenses, and losses associated with defending against the State's fabricated charges, including navigating the complex criminal trial and appellate process *pro se*.

79.     Long prior to the events described herein, Plaintiff was in a psychologically vulnerable, fragile state, suffering from Post-Traumatic Stress Disorder (PTSD) caused by a previous, unlawful 63-day imprisonment and a subsequent 4-day illegal over-detention perpetrated by Sheriff's deputies in the same county in 2015.

80.     Under the "Eggshell Skull" doctrine, Defendants took Plaintiff as they found her, and their unconstitutional conduct directly and proximately exacerbated, aggravated, and amplified Plaintiff's pre-existing PTSD and psychological vulnerabilities.

81.     Plaintiff suffered, and continues to suffer, severe "garden-variety" emotional distress, mental anguish, humiliation, and intense psychological trauma proximately caused and worsened by Defendants' conduct.

82.     This compounded emotional distress manifested repeatedly over the last three years via severe, paralyzing anxiety, depression and a feeling of helplessness stemming from the immense, terrifying burden of defending her liberty against the State without legal training while knowing the county's history of unlawfully charging and confining her.

83. The emotional distress impeded Plaintiff's daily functioning, leaving her temporarily unable to complete ordinary everyday tasks, resulting in substantial strain on her personal relationships and responsibilities to others.

84. The actions of the Defendants were intentional, malicious, reckless, and demonstrated a callous indifference to Plaintiff's federally protected constitutional rights, justifying an award of punitive damages.

## V. JURY TRIAL DEMAND

Plaintiff requests a jury trial.

## VI. CERTIFICATION

I certify to the best of my knowledge, information, and belief, formed after a reasonable inquiry under the circumstances — which include having **no** access to a majority of relevant and material documents and recordings within the possession of Defendants and not readily available to the public — that:

(a) this Complaint is not being presented for any improper or frivolous purpose;

(b) to the best of my ability, I believe that the claims and other legal contentions contained herein are either warranted by existing law, or are being brought for the purpose of extending, modifying, or reversing existing law or for establishing new law;

(c) the factual contentions in this Complaint have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, including depositions, of the Defendants and other witnesses.

Executed this 2nd day of August, 2026.

Jane Doe:        Her Mark
Jane Doe, CCDC #25361
c/o LWRN
5 South Center Street, #1100
Westminster, MD 21157
410-857-5444
lwrn@mail.com